Affirmed.

24 C.C.P.A.(Patents)

## MENGLE v. FUERST.

Patent Appeal No. 3702.

Court of Customs and Patent Appeals.
Dec. 7, 1936.

Mason, Fenwick & Lawrence, of Washington, D. C. (Saperston, McNaughtan & Saperston, of Buffalo, N. Y., and Charles R. Fenwick and Joseph Dugan, both of Washington, D. C., of counsel), for appellant.

Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich. (Clarence B. Zewadski, of Detroit, Mich., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

On April 6, 1933, the appellant filed an application for patent in the United States Patent Office on an alleged new, original, and ornamental design for a bottle. On April 10, 1933, the appellee, Edwin W. Fuerst, also filed in that office an application for a design for a bottle. While there are some slight differences, it is conceded by the parties that the designs are, for all practical purposes, identical. Thereupon an interference was declared in the office between said applications. The appellant, being the senior party, relied upon his application for proof of conception and reduction to practice. The appellee took testimony in order to attempt to establish a prima facie case sufficient to overcome the seniority of the appellant's application. The appellant took no testimony.

In his preliminary statement, the appellee alleged that he conceived the invention, the subject matter of the interference, on or about April 15, 1931, disclosed the same to others on April 18, 1931, and that the invention was reduced to practice on or about July 3, 1932. The Examiner of Interferences found that the appellee was the first to conceive and reduce to practice the design at issue, and awarded him priority. On appeal, the

Board of Appeals affirmed this decision. The party Mengle has appealed.

The issue has been somewhat simplified by the concessions of the parties. The appellant admits that the design of the bottle, the subject matter of this interference, was conceived, reduced to practice, and commercially produced prior to April 6, 1933, his filing date. It is also conceded by the appellant that bottles embodying the design shown in the drawing of the appellee's patent application, filed April 10, 1933, were commercially produced prior to appellant's date of filing, and that the drawings for said bottle, and the various models thereof, were all made prior to appellant's filing date. It is also admitted that these bottles were made by the Owens-Illinois Glass Company, of Toledo, Ohio, and sold to Wizard, Inc., of Chicago, Ill.

The single contention made by the appellant on this appeal is that the bottles in question, together with the working plans therefor, and models, were not the result of the activities of the appellee, Fuerst; that the original conception of the party Fuerst, upon which he relies largely for a date of conception, is represented by what is known as Fuerst Exhibit No. 1-A, and that this is an entirely different design from the design which was used in the manufacture of the bottles which have been commercially produced and sold; that the record shows that Fuerst did not conceive the design which was finally used in production of said bottles, and which was embodied in the working drawing therefor, known as Fuerst Exhibit No. 25; that this design was not the conception of Fuerst, but of some one else in the employ of the Owens-Illinois Glass Company, presumably the draftsman, Harste, who made said working drawings.

Counsel for the appellant thus state the contentions made by them:

"(1) Is appellee's Exhibit 1-A, in view of the prior art, the same design as appears in his patent application?

"(2) If appellee's Exhibit 1-A is a different design, did appellee or some other person create the design shown in appellee's patent application Serial No. 47,-744 involved in this interference?

"(3) If some other person created the design shown in appellee's patent application Serial No. 47744 can appellee avail himself of this creation in establishing priority?"

The facts shown by the record are, substantially, as follows:

The appellee was a designer in the employ of Owens-Illinois Glass Company, being first employed there in 1929. In April, 1931, Fuerst, who was then in the New Uses and Research, Art Division, of his company, received a request from the Sales Department of the company, made by LaPompadour Company, for a design for a new bottle. This request was received by Fuerst on April 6th, and on or about April 15th he produced a design which has been introduced in evidence herein, and a photostat of which is known as Exhibit 1-A. The office number of the design was D-740. This design was submitted to LaPompadour Company, and thereafter to five other prospective customers, but was not adopted by any of them. In 1932, Wizard, Inc., by correspondence, requested a design for a new type of bottle to be made up for it by the Owens-Illinois Glass Company. This request was turned over to David V. Benner, of the Sales Division of the company, and by him was transmitted to Lorain A. Blake of the Production Planning Division, whose duty it was to order mold equipment and to follow up the making of the samples, and to perform other similar duties. In transmitting this request to Blake, Benner directed Blake as follows: "L. A. Blake order wood model Have Ed Howe see Fuerst for design D V B 6/29."

Blake then directed Edward W. Howe, who was then employed in the Model Design Department, and had charge of making up wooden models, to confer with the appellee about the design of this proposed bottle. The witness Howe testified that he then "contacted Ed. Fuerst and received instructions from him." He states that he received verbal instructions as to the model shown on the photostat numbered D-740, and was told by Fuerst to make up a model, "coming as close as manufacturing conditions would permit," to that particular sketch. Howe then delivered this sketch to another employee by the name of Adolph Harste, who made a working drawing, which is in evidence as Fuerst Exhibit 25, and which shows the design which is the subject of the application for patent here. This drawing was made July 1, 1932, and thereafter a model was made from which a sample was produced, and which it is admitted

embodied the subject matter of the controversy here.

Harste testified that he was a draftsman for the Owens-Illinois Glass Company in 1931, and that it was his business to make up drawings for wood models; that he made the drawing, a blueprint of which is known as Exhibit 25, on July 1, 1932. He stated that he had a photostat, Exhibit 1-A, to work from, which he received from the witness Howe, and which he followed. The appellee stated that the witness Howe had talked to him about preparing a design for the Wizard bottle, and he had referred Mr. Howe to sketch D-740. He also stated that he had seen blueprint, Exhibit No. 25, and that he had approved the final model before it went out.

It appears that no one connected with the Owens-Illinois Glass Company, and with the production of this particular design for a bottle, makes any claim to authorship of the design, except Fuerst. The witness Benner, when asked who designed the bottle which is the subject of the controversy here, stated that the design was created by the appellee. A similar statement was made by the witness Blake. These witnesses were certainly in a position where the details of creation of this design were well known to them. All the circumstances surrounding the transaction lead to the conclusion that this was the general understanding throughout the plant at the time of the creation of this design, and at the time of manufacture of the commercial bottles following this design was begun. Since that time large quantities of these particular bottles have been manufactured and sold.

It is argued by appellant that the design shown by the original sketch, Exhibit 1-A, and by the blueprint, Exhibit 25, are not the same. It is argued that the sketch, Exhibit 1-A, shows a bottle, the vertical lines of which converge toward the bottom, whereas, in the bottle which is the subject of controversy here, the sides are parallelograms, the width of the bottle being the same throughout the length of the side panels. An inspection of the two designs discloses that there seems to be some convergence in the vertical side lines of the side panels toward the bottom of the design, Exhibit 1-A. It is noted, however, by the appellee, and called to our attention, that the artist's sketch, Exhibit 1-A, is that of a bottle turned partially sideways, so that in perspective the side panels of the bottle appear to have lines converging toward the bottom. This, it is said, is a result of an attempt by the artist to disclose perspective.

While it does seem that there is some difference in the designs in the respect indicated, the other portions of the designs are identical, and it appears plainly, from the record, that the design that was finally produced, namely, that as shown by Exhibit 25, was the result of conferences between Howe and Fuerst and Harste, and that before the design was transmitted to a mold for a sample bottle, Fuerst, who had charge of this particular design, was fully conversant with the details and approved the same.

The case of Foster v. Antisdel, 14 App. D.C. 552, is, in our opinion, directly in point as to the contentions made by appellant here. In the case cited, a bed frame was involved, and Antisdel was the junior party. Antisdel proved that prior to the application of Foster, the senior party, he or his company had sold to one of the witnesses a bedstead containing the invention of the issue. The Court of Appeals said, in part:

"Antisdel having himself sworn in his application that he is the first and original inventor of the device in question, and having proved the reduction to practice of the subject matter of the invention, and produced the completed article itself, and actually sold the same at a time prior to the date of Foster's application, a strong prima facie case is made in support of Antisdel's claim, which must prevail until overcome by at least a clear preponderance of proof. But notwithstanding this strong prima facie case presented in support of Antisdel's claim, Foster has not attempted to rebut or overcome it, by the production of proof to establish priority of invention by himself, but he relies upon the evidence given by Lloyd, a witness produced by Antisdel, whose testimony, as contended by Foster, tends to show that Lloyd was the inventor of the improvement or device in issue, and not Antisdel. * * * But evidence that some other party than the parties to the pending interference proceeding is the real inventor of the device in issue is impertinent to the issue, and can not be received or considered by those charged with the duty of determining the issue. Indeed, if the practice obtained of allowing the claims and pretensions of any and all

persons, though not parties to the proceeding, to be set up as means of defeating the priority of claim of one of the parties to the proceeding, it would be very difficult, if not almost impossible, in many cases, to try the issue of interference as between the immediate parties to it. Such practice would open the door to all sorts of collusions, and perjury would be the recourse of many who failed to support their claims by legitimate evidence. In this case, Lloyd, the witness, not being a party to the proceeding, can not be bound by any ruling that may be made in respect to the question of priority. That question as between Antisdel and Lloyd can not be tried on the present issue. It has been settled by decision both in the Patent Office and in the Circuit Court of Appeals of the United States that the question—'whether a third party was the inventor of the device for which a party has received a patent, should not be inquired into either by the court or by the Commissioner of Patents in interference proceedings between the parties to such interference.' Christie v. Siebold, C.D.1893, 515: S.C., in Circuit Court of Appeals, 64 O.G. 1650.

"The decision in a matter of interference only settles the immediate action of the Patent Office, as between the parties to such interference proceeding; and there is no limit to the number of interferences to which a pending application or an unexpired patent may be subject. Gloucester Isinglass Co. v. Brooks [C.C.] 19 F. [426] 427; Kirk v. Du Bois [C.C.] 33 F. 252; and see, also, on this subject, Pentlarge v. Pentlarge [C.C.] 19 F. 817; Lockwood v. Cleveland [C.C.] 20 F. 164; American Clay-Bird Co. v. Clay-Pigeon Co. [C.C.] 31 F. [466] 467.

"In the opinion of a majority of the examiners in chief in this case the principle and the practice upon this subject are well stated in these terms:

" 'Whether Antisdel can have a patent in the face of Lloyd's testimony is a question to be determined in the first instance by the primary examiner when this interference proceeding has been terminated. It is a question between Antisdel, as an applicant, and the Patent Office. It is one to which Foster is not a party. It may be a question to be decided between Antisdel and Lloyd as parties to an interference in which Antisdel's application and one by Lloyd, which we were informed at the hearing is filed in the office, shall be included. Whether the question be ex parte, whether Antisdel is an inventor so that he can have patent, or whether it be whether Antisdel or Lloyd is the prior inventor, in either event Foster is not a party to the question. The proof herein shows that in either event he, Foster, is not the prior inventor. He can not intervene as an inventor in any proceeding in this office on applications of other inventors.' "

The Antisdel Case, supra, was followed by us in Borglin v. Palmer, 70 F.(2d) 899, 900, 21 C.C.P.A. (Patents) 1109, in which we said, in part:

"The principal controversy between the parties here is whether Palmer specifically directed Burda about this process, or whether Burda conceived the process himself. Leaving out of account, for the present, the materiality of a discussion of this question, we have considered the matter with a view to determination of this point. The tribunals in the Patent Office were agreed that Palmer had shown a conception and reduction to practice during these experiments, which were conducted by Burda under Palmer's direction. Counsel for appellant vigorously attack this finding, contending that Palmer not only did not sustain the burden placed upon him as junior party by proving conception and reduction to practice at this time, but insist further that his entire proof of reduction to practice and conception consists of his own testimony, which counsel insist has been contradicted in its essential features by the testimony of the witness Burda.

"We have examined the testimony on this point, in view of these contentions of the appellant, with much care. From such examination we are satisfied that Palmer directed the witness Burda as to the general conduct of these experiments, and that, what Burda did, he did under the direction, with the concurrence and help, and with the full knowledge, of Palmer, who was in responsible charge of these experiments. Burda so states in his testimony. Although there is some showing in Burda's cross-examination that a part, at least, of the conception may have originated in his mind, it is apparent that he was of opinion, at the time he testified, that the experiments were conducted in conformity with Palmer's directions, and that Burda himself was not claiming to be the one responsible for their conduct or methods. Palmer was fully cognizant

of whatever was done at the time. Burda was performing his services while in the employ of Palmer, at Palmer's directions, and, under any reasonable interpretation of the rule so often announced by this court, the presumption is that benefit of his work inured to Palmer. Braunstein v. Holmes, 30 App.D.C. 328; Fritz v. Hawn, 37 F.(2d) 430, 17 C.C.P.A. [Patents] 796; De Forest v. Owens, 49 F.(2d) 826, 18 C.C.P.A. [Patents] 1424; Owens v. Sponable, 69 F.(2d) 650, 21 C.C.P.A. [Patents] 992. * * *

"Counsel for appellant do not seriously contend that it aids the case of the appellant to claim that Burda, and not Palmer, was the real inventor. It is well settled by the authorities that such a claim will not aid a party in an interference proceeding. The issue is one of priority as between the parties to the interference, and the rights of parties who are not in the interference are not involved or material. Foster v. Antisdel, 14 App.D.C. 552; Prindle v. Brown, 24 App.D.C. 114; Luellen v. Claussen, 43 App.D.C. 444; Beidler v. Caps, 36 F.(2d) 122, 17 C.C.P.A. [Patents] 703; Cooper v. Hubbell, 53 F.(2d) 1072, 19 C.C.P.A. [Patents] 790; Derby v. Whitworth, 62 F.(2d) 368, 20 C.C.P.A. [Patents] 791.

"It is plainly shown by this record that the party Palmer was in possession of this invention, fully conceived and fully reduced to practice, before the party Borglin entered the field by filing his application. Palmer, having shown that he was in full possession of the subject-matter of the invention prior to Borglin's filing date, has established a prima facie case, which must prevail, unless overcome by other evidence or by facts and circumstances as shown by the record. Foster v. Antisdel, supra."

On this record, certainly Mengle cannot be awarded priority, for it is shown thereby that he was not the first inventor of the subject matter of the issue.

We are of opinion that the Board of Appeals did not err, on this record, in awarding priority to the party Fuerst.

The decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, Associate Judge concurs in the conclusion.